DOUBLEDAY and Another, Administrators, *v.* MAKEPEACE.

A bill in chancery was filed to obtain a new trial of a suit at law. The bill relied on the absence of a material witness for the complainant at the time of the trial, whose place of residence was then unknown; but it did not state that any diligence had been used before the trial to find the witness, or to procure his testimony; and it appeared that the suit at law was not brought until several years after the cause of action had accrued. *Held*, that the bill should be dismissed.

May Term,
1835.

————

DOUBLEDAY
v.
MAKEPEACE.

Tuesday,
May 26.

APPEAL from the *Tippecanoe* Probate Court.

STEVENS, J.—*Makepeace* in *October*, 1832, declared against *Doubleday* and *Jenny*, administrator and administratrix, &c. in assumpsit on promises said to be made by their intestate several years before his death, for goods and chattels sold and delivered, use and occupation of land, and for money had and received. Pleas, non-assumpsit, statute of limitations, and payment. Judgment for the defendants. In *November*, 1833, *Makepeace* filed a bill in chancery for a new trial in the suit at law, on which, after answer, &c., a new trial was granted, and *Doubleday* and *Jenny*, the defendants, appealed to this Court.

The question in this Court is,—Is the complainant entitled to the relief sought?

Applications to a Court of chancery for a new trial, after a trial at law, are in our time very rare. The practice, except in cases the most extraordinary, has long since gone out of use, because Courts of law are now competent to grant new trials, and are in the constant exercise of that right to a most liberal extent. Anciently, Courts of law did not grant new trials, and in those days Courts of equity exercised that jurisdiction over trials at law, and compelled the successful party to submit to a new trial, when justice required it; but even in that age, the Court of chancery proceeded with great caution. A new trial was never granted, unless the application was founded upon some clear case of fraud or injustice, or upon some newly discovered evidence, which the party could not possibly, by any vigilance or industry of his, have had the benefit of on the first trial.

In the case of *Curtis* v. *Smallridge*, 1 Chan. Ca. 43, it clearly appeared that the recovery was unjust, and had been so admitted by the defendant; yet as it did not appear that the party seeking the relief, was prevented by any unavoidable accident from having his witnesses at the trial in the Court of law, the bill was dismissed. In the case of *Tovey* v. *Young*, Prec. Chan. 193, the bill for a new trial was dismissed, although the witness on whose testimony the judgment at law was founded, was, after the trial, discovered to be interested. In the case of *Richards* v. *Symes*, 2 Atk. 319, a new trial was refused, although it clearly appeared that the party was not apprised of the evidence he had to encounter, and was therefore unprepar-

ed to meet it. And in a very early case, *Sewel* v. *Freestow*, 1 <span>May Term, 1835.</span>
Chan. Ca. 65, a new trial was refused, although the defendant
at law had written a letter which would have defeated him, if <span>Doubleday v. Makepeace.</span>
the plaintiff could have proved it at the trial; and which, after
the trial, he discovered evidence to prove.   And it may be
added that since the decision in the King's Bench, in *Bright* .
v. *Eynon*, 1 Burr. 390, the doctrine of new trials being enforc-
ed in the Courts of law, by Courts of equity, is almost entirely
overruled, on the broad ground that there must be an end to
litigation.   In the case of *Bateman* v. *Willoe*, 1 Sch. & Lef.
201, Lord *Redesdale* observed, that a bill for a new trial was
watched by equity with extreme jealousy, and it must see that
injustice has been done, without the fault, negligence, or inat-
tention, of the party seeking the relief.

In the case now before us, the decree cannot be sustained.
The claim on which the relief is sought is stale; part of it was
barred by the statute of limitations when the suit at law was
commenced; and the remainder is now barred.   If there were
no other objections, that of itself would paralyze the hand of
equity.   The complainant has slept over his rights, if any he
had, for years, and until the person against whom he claims is
dead, and there is no one who understands the truth of the case
left surviving, to protect the interests of the deceased.   Neither
law nor equity favours the negligent and sleeping.   But that is
not all; he has not shown that he used any diligence to procure
the attendance of witnesses, or to procure evidence at the trial
at law.   Nor has he shown that he had not all the witnesses
and evidence on that trial that he expected to have.   He has
alleged nothing of the kind.   He shows that he went into that
trial willingly, and makes no complaint about the witnesses
not attending, or about the lack of evidence.   He did not apply
to the Court to continue the cause, nor for a new trial.   He
says, however, that he has discovered a new and material wit-
ness, and that at the former trial he did not know where said
witness resided.   But by his own showing, it is clear that he
knew as well before that trial, what that witness knew about
the matter in controversy, as he now knows; and he does not
allege that he made any inquiry after him, or endeavoured in
any way to find him, or to procure his testimony.   It is plain
that he made no such exertion, but went knowingly and wil-
lingly into the trial without him.   The only apology he makes

May Term, 1835.

for having lost his suit at law is, that he was lying sick at the time of the trial; but he does not inform us how that caused him to lose his case. Nor does he inform us how long before that trial, he had been confined by sickness. He says the cause was tried in the absence of his material witnesses, but he does not inform us that any were absent that he expected would be there, or that he had endeavoured to procure the attendance of any that were not there; nor does he allege that he would have been better prepared, or would have gained his case, if he had not been sick. The record shows that he was represented on that trial by two very respectable attorneys at law, and it is not to be presumed that they neglected his interests; but if they did, he must look to them for relief as to that, and not to a Court of equity.

This is not a case in which a Court of equity can interfere with a judgment at law, and the decree must be reversed (1).

*Per Curiam.*—The decree is reversed with costs. Cause remanded, with directions to the Circuit Court to dismiss the bill.

*A. S. White*, for the appellants.
*W. W. Wick*, for the appellee. .

(1) Vide *Lansing* v. *Eddy*, 1 Johns. Ch. Rep. 49; *Simpson* v. *Hart*, Id. 91; *Smith* v. *Lowry*, Id. 320; *Woodworth* v. *Van Buskerk*, Id. 432; *Barker* v. *Elkins*, Id. 465; *Dodge* v. *Strong*, 2 Id. 228; *Foster* v. *Wood*, 6 Id. 87; *Floyd* v. *Jayne*, Id. 479; the cases in 2 Bart. & Harr. Eq. Dig. 80 to 83; *Deputy* v. *Tobias*, Vol. 1, of these Rep. 311; note 2 to *Coe* v. *Givan*; Id. 367.